

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RICHARD ALLEN HAFNER, | \* | CIV. 06-4039 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| vs. | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| DANIEL LIMOGES, Sheriff; | \* | |
| MARK NELSON, Head Jailer; and | \* | |
| TIM SIMONS, in their individual and | \* | |
| official capacities, | \* | |
| | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendants filed a Motion for Summary Judgment, Doc. 62. Plaintiff filed a brief in response, an Affidavit and a reply to Defendants' Statement of Undisputed Material Facts. And Defendants filed a Reply Brief. Before Plaintiff filed his opposition to the motion, however, he filed a Notice of Interlocutory Appeal, Doc. 76, which was eventually dismissed by the Eighth Circuit due to Plaintiff's failure to prosecute the appeal. (Judgment and Mandate, Docs. 94, 95, December 21, 2007). For the reasons set forth below, Defendants' Motion will be granted as to the claims against Defendants Daniel Limoges and Tim Simons and this action will be dismissed without prejudice as to the claims against Defendant Mark Nelson.

Defendant Mark Nelson was never properly served in either his official or individual capacity. Although Plaintiff sought to have him served with process in this action, the Returns of Service dated January 29, 2007, were returned unserved because Nelson was no longer employed at the Union County Jail at the time of the attempted service and the address Plaintiff supplied was no longer a valid address for Nelson. (Docs. 59 and 60.) Defendants notified Plaintiff that Nelson was not properly served in their Reply to Plaintiff's Opposition to Motion for Summary Judgment, Doc. 83, filed on August 9, 2007. Plaintiff has not informed the Court that he took any further action

to properly serve Nelson with process in this case. Accordingly, this action will be dismissed without prejudice as to Nelson pursuant to FED.R.CIV.P. 4(m).

## I. BACKGROUND

The claims in this action under 42 U.S.C. § 1983, relate to Plaintiff's incarceration as a pretrial detainee in the Union County Jail in Elk Point, South Dakota, from March 23, 2004 to July 26, 2004. Three Union County officials are named in this action and they are all sued in both their individual and official capacities. Daniel Limoges is the Sheriff of Union County. Mark Nelson was the head jailer at the Union County Jail, but as noted above, this action is dismissed against Nelson in both his individual and official capacities. Tim Simons was a jailer at the Union County Jail.

Plaintiff submitted a Grievance form on either April 19 or 20, 2004, consisting of 25 complaints regarding his incarceration at the Union County Jail. He received a reply to his grievance and it appears he has exhausted his administrative remedies on those claims. He submitted additional grievances during his incarceration at the Union County Jail. Defendants do not contend Plaintiff failed to exhaust his administrative remedies on any of the claims in this action.

Plaintiff filed an Amended Complaint, Doc. 50, in which he asserts the following actions violated his constitutional rights: (1) his legal mail was opened and read outside of his presence; (2) he did not receive recreation time for weeks at a time; (3) he was transferred to the federal cellblock in retaliation for filing his grievance; (4) he cracked his tooth on June 16, 2004, which later turned into an abscessed tooth, for which he was only given aspirin, and he did not see a dentist while incarcerated in the Union County Jail; (5) he was forced to wash his clothes in a sink with bar soap, which caused him to develop a severe rash on his chest and arms; (6) the toilets and showers did not work; (7) he was forced to use cleaning chemicals that caused him to cough; and (8) he was charged excessive amounts of money to use the telephone to contact his attorney and his calls with his attorney were monitored. Plaintiff admits he cannot show any damages caused by the mail being

opened outside his presence and he has withdrawn that claim. (Doc. 81 at p. 7.) Accordingly, Defendants are entitled to summary judgment on the legal mail claim.

Defendants deny that any conduct on their part deprived Plaintiff of any constitutional right or caused Plaintiff any damage.

## II. DISCUSSION

In considering a motion for summary judgment, the Court asks the question whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting FED.R.CIV.P. 56(e)). Simply creating a factual dispute cannot defeat a motion for summary judgment; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *See, e.g., Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998). If the allegations in a verified complaint consist of nothing more than conclusory allegations, however, they are insufficient to overcome a summary judgment motion. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

Although Plaintiff's initial Complaint was verified, his Amended Complaint was not verified. Plaintiff did not sign the Amended Complaint under penalty of perjury or swear or affirm it to be the truth. Thus, Plaintiff's statements in the Amended Complaint are not admissible as evidence to oppose Defendants' summary judgment motion. He did, however, sign his initial Complaint, Doc. 1, under penalty of perjury. "A plaintiff's verified ... Complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted); *see Burgess v. Moore,* 39 F.3d 216, 217-18 (8th Cir.

1994) (holding that because the inmate signed his complaint and affidavit under penalty of perjury, the court should have treated both documents as verified). The Eighth Circuit recognized that there is a distinction between verified pleadings and unverified pleadings. *See Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984) (holding that "a litigant, especially one unrepresented by counsel ... is [not] under a duty to repeat his verified allegation in a new affidavit. .... This is not, in other words, a case of a plaintiff who simply rested on the unverified allegations of his pleadings."). In this case, the Court will consider the initial Complaint and Plaintiff's Affidavit filed in support of his opposition to the summary judgment motion as evidence, but the non-verified Amended Complaint is not admissible as evidence in opposition to Defendants' motion. In addition, Defendants filed Plaintiff's sworn testimony from his deposition (Doc. 66, Ex. 5), which will also be considered as evidence in ruling on the pending motion.

### A.     Individual capacity claims

Although a pretrial detainee's claims regarding inadequate medical care are analyzed under the Fourteenth Amendment's Due Process Clause, the Eighth Circuit explained that it "repeatedly [has] applied the same 'deliberate indifference' standard [to pretrial detainee's claims] as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). Prison officials are prohibited by the Eighth Amendment from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* To prevail on a claim of deliberate indifference, under 42 U.S.C. §1983, a plaintiff must prove: (1) he suffered an objectively serious medical need; and (2) the prison officials actually knew of but deliberately disregarded that need. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "To constitute an objectively serious medical need or a deprivation of that need, [the Eighth Circuit] has repeatedly emphasized that the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). "Deliberate

4

indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). "Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

### 1. Recreation time

In his Amended Complaint, Plaintiff alleges he received no recreation for weeks at a time. He states there was a schedule posted in the federal cellblock (to which he was transferred on April 26, 2004) that inmates were to have recreation two nights per week, but that this schedule was never followed. Plaintiff alleges Defendant Limoges was personally aware that inmates in the federal cellblock were not given access to the recreation room and he did not take action to correct this situation. In his Affidavit, Plaintiff states he was transferred to the federal cellblock on or about May 10, 2004. He further states, "I did not receive recreation for weeks at a time which I can prove in a oral hearing on Summary Judgment." (Hafner Affidavit, Doc. 82, ¶ 12.) In the initial Complaint, Plaintiff stated: "I received no recreation for weeks at a time even though the Union County Jail had a recreation room. My muscles and weight dropped dramatically." (Complaint, Doc. 1.)

Limoges stated in his Affidavit that all prisoners were provided recreation outside the cell block twice a week and that Plaintiff did not always use this recreation time. He also stated that Plaintiff was able to freely move from his cell to the day room from 7:30 a.m. to 10:30 p.m. and was not confined to his cell during that time. Plaintiff's offer to prove in an oral hearing that he did not receive recreation time for weeks does not satisfy his affirmative burden to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union*, 967 F.2d at 271(quoting FED.R.CIV.P. 56(e)). Plaintiff submitted no medical evidence to support his conclusory statement that during his four-month stay at the Union County Jail his "muscles and weight dropped drastically." (Doc. 1.) In his initial Complaint he states he lost over 25 pounds. He does not, however, provide any evidence of his weight before

5

incarceration at the Union County Jail or his weight at the end of his stay there. There is no triable issue of fact on whether it would be obvious to a layperson that lack of access to the recreation room or Plaintiff's loss of 25 pounds would require medical treatment. Plaintiff's conclusory statements do not create a genuine issue of material fact that he developed any medical condition that rose to the level of a serious medical need related to inadequate recreation time during his four-month incarceration at the Union County Jail.

### 2. Retaliation

Plaintiff contends he was transferred to the federal cellblock in retaliation for filing his grievance. He contends that after he submitted his grievance he was escorted twice to Nelson's office to discuss the grievance. On the way back to the cellblock after the second trip to Nelson's office on April 22, 2004, Plaintiff alleges Simons said "'quit making trouble by writing grievances and kites. We have ways of dealing with people like you!'" (Hafner Affidavit, Doc. 82 at ¶ 4.) Approximately three weeks later, on May 10, 2004, Simons transferred Plaintiff to the federal cellblock and Simons said "'this will keep you out of our hair. This is what happens when you try to cause trouble.'" (*Id.* at ¶ 5.)

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). Filing inmate lawsuits and prison grievances are protected First Amendment activities. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). To prevail on a retaliatory transfer claim, Plaintiff is required to establish that "but for his protected First Amendment activity, he would not have been transferred." *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999).

In his Amended Complaint, Plaintiff alleges Limoges was responsible for making the decision to move Plaintiff to the federal cellblock. There is no evidence in the record of any statements or actions by Limoges that creates a genuine issue of material fact that his decision to

6

transfer Plaintiff to the federal cellblock was done in retaliation for Plaintiff submitting grievances regarding his living conditions or that he would not have made the same decision but for Plaintiff's filing of grievances. Although Simons apparently carried out Limoges' decision to transfer Plaintiff by making the physical transfer, there is no evidence that Simons had any authority to transfer Plaintiff from the pre-trial detainee cellblock to the federal cellblock or that he participated in making that transfer decision. Accordingly, there is no genuine issue of material fact remaining for trial on the claim that Simons retaliated against Plaintiff by transferring him to the federal cellblock.

### 3. Medical claims

In his Affidavit, Plaintiff alleges three medical conditions were not properly treated while he was incarcerated in the Union County Jail. The first condition was a cracked tooth, which Plaintiff claims became an abscessed tooth. Plaintiff stated in his initial Complaint that he cracked his tooth on June 16, 2004 and that he started having severe pain on June 28, 2004. The second condition concerned knee pain. In his deposition, Plaintiff stated he hurt his right shoulder, left elbow and left knee when he fell trying to get onto the top bunk. (Hafner Deposition, Doc. 66, Ex. 5 at p. 32.) This fall occurred a couple of weeks after April 19, 2004, which was when he submitted his first grievance. Finally, Plaintiff asserts he developed sores and a rash that were painful and irritating due to being required to wash his clothes in the sink with bar soap. Plaintiff does not provide any evidence as to when he developed sores and a rash from washing his clothes in the sink.

In Plaintiff's Affidavit, he states: "During the first part of May, 2004, The Sheriff and the Head Jailer [Mark Nelson] came into the Federal cellblock and informed us (inmates) that from now on all medical kites would be screened by the Head Jailer and that the Head Jailer would decide who went to health service." (Hafner Affidavit, Doc. 82 at ¶ 6.) There is no evidence that Simons had authority to obtain medical care for Plaintiff at any time during his incarceration at the Union County Jail or that he took any actions to deny or delay Plaintiff's access to such medical care. *See Roberson*, 198 F.3d at 647 (holding that prison officials can be held liable if they personally and intentionally deny or delay an inmate's access to medical care, or personally interfere with the

7

prescribed treatment). Rather, Nelson was the jail official who screened the requests for medical care. The claims against Nelson were dismissed because Plaintiff did not serve him with the summons and Amended Complaint in this action.

In his deposition, Plaintiff stated he sent kites to Limoges regarding his cracked tooth and that his wife called Limoges' office to get a dentist appointment scheduled. (Doc. 66, Ex. 5 at p. 26-27.) Because there is some evidence that Limoges knew of Plaintiff's complaints of tooth pain, the next issue to be considered is whether there is a genuine issue of material fact that Plaintiff had an objectively serious medical need. Other than Plaintiff's conclusory statements that he had a swollen jaw, there is no medical evidence in the record to support his allegations. Moreover, the records from the South Dakota State Penitentiary ("SDSP"), the institution Plaintiff was transferred to immediately after his incarceration at the Union County Jail, do not show that Plaintiff had a serious medical need. The dental records show that Plaintiff was examined on August 2, 2004 at the SDSP and it was noted Plaintiff had "occasional sensitivity" and a "possible crack" on one tooth. (Doc. 66 at Ex. 3.) The dental records from the SDSP do not show that Plaintiff even had an infection when he was examined on August 2, 2004. Accordingly, in the absence of any medical evidence or other evidence to support his conclusory allegations, the Court does not find there is a genuine issue of material fact that Plaintiff suffered an objectively serious medical need related to his teeth.

The record is unclear whether Limoges was made aware of Plaintiff's alleged shoulder, knee and elbow pain or the sores and rash from washing his clothes in the sink. In any event, as to Plaintiff's claims regarding his knee, elbow and shoulder, there is no medical evidence to show that he suffered an objectively serious medical need. The medical records from the SDSP do not provide any evidence that Plaintiff even has a condition in need of medical treatment. (Doc. 66, Ex. 4.) The pictures of Plaintiff's sores on his arms and chest, attached to his Affidavit, do not create a genuine issue of material fact that he suffered an objectively serious medical need. There is no medical evidence and it would not be obvious to a layperson that Plaintiff's sores rose to the level of a serious medical need. Accordingly, Limoges met his burden of showing there is no genuine issue of material

fact remaining for trial on Plaintiff's claims that he received constitutionally inadequate medical care while incarcerated at the Union County Jail in 2004.

### 4. Toilets, Showers & Cleaning Supplies

In his Amended Complaint, Plaintiff alleges the toilets and showers did not work properly at the Union County Jail and he was required to use cleaning chemicals that made him cough. "To establish that his conditions of confinement violated the Eighth Amendment, [Plaintiff] must show that (1) the alleged deprivation is sufficiently serious that it denies the minimal civilized measure of life's necessities, and (2) the prison officials were deliberately indifferent to an excessive risk to inmate health or safety." *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (internal quotation marks and citations omitted). Plaintiff did not include any reference in his Affidavit to the toilets, showers or cleaning chemicals at the Union County Jail. In his initial Complaint, he states he had a "cold" from a lack of warm water for showers and that he could smell sewage. He does not provide any evidence, however, to show there is a genuine issue of material fact that his cold was a serious medical need, or that his cold was caused by a lack of warm water in the showers. Moreover, Plaintiff has not pointed to any evidence that creates a genuine issue of material fact that the allegedly defective toilets or showers at the Union County Jail denied him the minimal civilized measure of life's necessities or that either of these conditions posed an excessive risk to his health or safety. As to the cleaning supplies, Plaintiff claims they made him cough. But he provides no evidence that his cough was a serious medical need or that the type of cleaning chemicals provided by the Union County Jail denied him the minimal civilized measure of life's necessities or posed an excessive risk to his health or safety.

### 5. Use of the Telephone

In his Amended Complaint, Plaintiff alleges he was charged excessive amounts of money for the use of the telephone to call his attorney. He also alleges his calls to his attorney were monitored. Defendants produced evidence that the Union County Jail uses a telephone system through a contract with an outside vendor and that billings to prisoners for telephone use comes directly from that

9

vendor. There is no evidence in the record to create a genuine issue of material fact that Plaintiff was unable to communicate with his attorney due to the telephone charges and the Court does not find any other potential constitutional violation due to allegedly excessive telephone charges. Moreover, there is no evidence in the record to show that Limoges or Simons were personally involved in monitoring any telephone calls between Plaintiff and his attorney or that they were aware of this conduct. Limoges and Simons are entitled to summary judgment on this claim.

**B.     Liability of Union County**

Defendants Limoges and Simons are sued in their official capacities as well as their individual capacities. Suits against county employees in their official capacities are treated as suits against the county. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). Under § 1983, a county "may not be held vicariously liable for the unconstitutional acts of employees." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A county may be held liable, however, "for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." *Id.* To hold Union County liable, Plaintiff "must prove that a [county] policy or custom was the 'moving force [behind] the constitutional violation.'" *Id.* (quoting *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 694 (1978)). For the reasons set forth in the discussion of individual capacity claims, none of the individual county Defendants are liable for an underlying substantive claim. Therefore, Union County cannot be held liable under § 1983. *See Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (holding that a county cannot be held liable under § 1983 where none of the county defendants are individually liable for an underlying substantive claim).

### III. CONCLUSION

The claims against Defendant Mark Nelson will be dismissed without prejudice because Plaintiff failed to effect service of the Amended Complaint and summons on this Defendant within 120 days after its filing. Defendants Limoges and Simons met their burden of showing there are no genuine issues of material fact remaining for trial on any of Plaintiff's claims in this action. In light

of the dismissal of the claims against the individual county employees, Union County cannot be held liable under § 1983 in this action. Accordingly,

 IT IS ORDERED:

1.  That Plaintiff's claims against Defendant Mark Nelson in both his individual and official capacities are dismissed without prejudice, pursuant to FED.R.CIV.P. 4(m), for failure to effect service of the Amended Complaint and summons on this Defendant within 120 days after the filing of the Amended Complaint.

2.  That Defendants Dan Limoges and Tim Simons Motion for Summary Judgment, Doc. 62, is granted on all of Plaintiff's claims in this action in both their individual and official capacities.

Dated this 5 day of February, 2008.

          BY THE COURT:

          _____
          Lawrence L. Piersol
          United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY_____, Deputy
 (SEAL)

11